UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Raymond L. Semler,

                Plaintiff,                      Court File No. 16-cv-399 (JNE/LIB)

      v.

                                      **REPORT AND RECOMMENDATION**

Emily Johnson Piper, et al.,

                Defendants.

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of 28 U.S.C. § 636, and upon Defendants' two Motions to Dismiss, [Docket Nos. 10 and 22]. The Court took Defendants' motions under advisement on the parties' written submissions.

For the reasons discussed herein, the Court recommends that both Defendants' Motions to Dismiss, [Docket Nos. 10 and 22], be **GRANTED**.

## I.    BACKGROUND  AND STATEMENT OF FACTS[1]

Plaintiff Raymond L. Semler ("Plaintiff") is civilly committed to the Minnesota Sex Offender Program ("MSOP"). (Compl., [Docket No. 1], at ¶ 1). Generally, Plaintiff brings a claim pursuant to 42 U.S.C. § 1983 alleging that Defendants[2] interfered with his "constitutional right to assist other MSOP 'Clients' in preparing legal documents/motions in the courts" and his general right to be a "jailhouse lawyer." (Id. at ¶¶ 9–10).

---

[1] For the purposes of the present motions to dismiss under Rule 12(b)(6), the Court accepts the facts alleged in the Complaint as true and construes them in the light most favorable to Plaintiff. See, Stodghill v. Wellston Sch. Dist., 512 F.3d 472, 476 (8th Cir. 2008).

[2] Plaintiff names as Defendants Emily Johnson Piper, Cindy Cherro, Shelby Hall, Allison Collins, Heidi Menard, Jessica Geil, Shannon Draves, Cheryl Floren, and Jordan Goodman.  Plaintiff brings suit against each Defendant in their individual and official capacity.

Plaintiff alleges that Defendants Cherro and Hall confiscated "legal documents from the unit printer," and they told Plaintiff that he could not "have this paperwork (or legal documents) because it ha[d] someone else's name on it." (Id. at ¶ 11).[3] Defendant Cherro and Hall told Plaintiff that they had "to confiscate the paperwork and send it to the Office of Special Investigations (OSI)." (Id.).

On January 12, 2016, Plaintiff filed a Client Request purporting to explain to Defendant Geil the situation relative to Plaintiff printing legal documents on the unit computer for other MSOP clients. (Id. at ¶ 12). Plaintiff explained to Defendant Geil that Plaintiff believed the MSOP could not legally restrict Plaintiff from helping other MSOP clients prepare legal documents. (Id.). Plaintiff alleges that Defendant Geil had been notified of prior incidents involving the confiscation of legal documents. (Id.).

On January 12, 2016, Plaintiff also filed a Client Request with Defendant Goodman explaining that Plaintiff believed that the MSOP could not restrict Plaintiff from assisting other MSOP clients "with the preparation of legal documents for the courts." (Id. at ¶ 14). On January 13, 2016, Defendant Goodman responded to Plaintiff stating that "[s]taff have a responsibility to protect clients' privacy. That is why staff held the [d]ocuments. Thank you." (Id.).

On January 13, 2016, Plaintiff filed an additional Client Request with Defendant Geil "stating that there [are] ongoing problems with the notary issue, and more namely with the printing [of] legal documents off the computer on my living unit (Unit 1-A) which do not contain Plaintiff's name on them." (Id. at ¶ 13). Plaintiff asserts that he notified the Attorney General's Office of the confiscation of legal documents on January 13, 2016, and that he informed Defendant Geil that he had notified the Attorney General's Office. (Id. at ¶ 12).

---

[3] The date of this interaction is not indicated in Plaintiff's Complaint. (See, Id.).

On January 15, 2016, Defendant Geil responded to Plaintiff's January 13, 2016, Client Request stating that "[t]his is a duplicate request regarding the printing issue. If you have questions about notary, please direct them to Susan Burns, as she supervises the HIMS staff. I am still working on the other request and will have a response with the timeline allowed." (Id. at ¶ 13).

Also on January 15, 2016, Plaintiff received an Individual Treatment Plan (ITP) from Defendant Collins. (Id. at ¶ 15). As a "goal," that treatment plan provides that "[d]uring check ins with his primary therapist, Mr. Semler will be transparent about his attitude and beliefs about following the rules and working with authority figures, his current level of rule compliance and what his work on unit computers is for." (Id.). The ITP's action plan provided that "Mr. Semler will only print off his own, personal paperwork on printers available to clients." (Id.). After receiving this treatment plan, Plaintiff wrote a Client Request to Defendant Collins explaining that Plaintiff believed that Defendant Collins "could not restrict Plaintiff from helping other clients in the preparation of legal documents for the courts." (Id.).[4]

Plaintiff also received an Annual Treatment Progress Report on January 15, 2016. (Id. at ¶ 16). In the section entitled "Cooperation with Rules and Supervision," the Annual Treatment Progress Report provided, in part, that

> During this review period, although Mr. Semler did not receive any behavioral expectations reports, he was observed engaged in concerning behaviors including other client's paperwork. Several pieces of paperwork were secured after Mr. Semler had printed them off and staff had noticed there were signed by other clients as if Mr. Semler was the one writing the letters. In another instance, while his peers were at notary services, Mr. Semler "apparently" cut in line, stating "this one is the one that is going to the courts" and put it in the window for the notary to sign. Ray Semler then made a comment that he will just send it to the court saying notary refused to sign.

---

[4] The date of this client request is not indicated in Plaintiff's Complaint. (See, Id.).

(<u>Id.</u>). Defendant Collins had electronically signed the Annual Treatment Progress Report on January 12, 2016, and Defendant Menard had also electronically signed the report on January 14, 2016. (<u>Id.</u>).

On January 20, 2016, Defendant Geil responded to Plaintiff's January 12, 2016, Client Request. (<u>Id.</u> at ¶ 12). Defendant Geil's response informed Defendant that his "issues with unit staff need to be addressed through the facility chain of communication." (<u>Id.</u>). Regarding the confiscated documents, Defendant Geil's response provided that "[a]lthough clients have the right to help other clients with their legal work, staff do have the right to ask the other client to confirm you are working together and/or temporarily secure items they believe are suspicious. We will clarify that staff are aware clients can print off of Lexis Nexus without verifying the other clients' permission." (<u>Id.</u>).

On January 21, 2016, Defendant Collins responded to Plaintiff's Client Request regarding the Individual Treatment Plan informing Plaintiff that "[Plaintiff], as always, [was] invited to consistently meet with [his] treatment team to discuss [his] behaviors and the intentions behind them." (<u>Id.</u> at ¶ 15). Defendant Collins further informed Plaintiff that Plaintiff "appear[ed] to be engaged in behaviors involving paperwork, behaviors that are not transparent and concerning to your team" and he encouraged Plaintiff "to follow what [was] in [his] current ITP." (<u>Id.</u>).

On February 4, 2016, Defendant Draves and Floren confiscated "legal documents" Plaintiff printed on the printer in "Unit 1-A." (<u>Id.</u> at ¶ 17). Plaintiff alleges that he was printing those documents for five other MSOP clients. (<u>Id.</u>). Defendants Draves and Floren informed Plaintiff that the "documents [did] not contain [his] name, and therefore [Defendants could not] give them to [Plaintiff]." (<u>Id.</u>). Plaintiff attempted to explain to Defendants Draves and Floren

4

that Plaintiff believed that Defendants could not restrict Plaintiff from helping other MSOP clients prepare legal documents. The Officer of the Day Kevin Carlson ("Officer Carlson") was also called. (Id.).

Plaintiff asked Defendants Draves and Floren and Officer Carlson, "If I printed off a case from . . . Lexis Nexus on the legal computer that is out of the 8th Circuit, which contains someone else's name on it, would you confiscate it?" (Id. at ¶ 18). Defendants Draves and Floren and Mr. Carlson responded that the circumstances Plaintiff described would be a different situation because those documents would be "public." (Id.). Officer Carlson informed Plaintiff that the staff was acting at the directive of Defendant Geil. (Id.).

Plaintiff further alleges that in an effort to punish Plaintiff for assisting other MSOP clients in "preparing their state and federal tax returns" Defendant Geil has given the MSOP staff a directive to confiscate documents from Plaintiff. (Id. at ¶ 24). Plaintiff alleges that under Defendant Geil's directive "[n]umerous unnamed MSOP staff" members have confiscated documents from Plaintiff and sent those documents to the Office of Special Investigations. (Id.). Plaintiff also alleges that Defendant Geil directed the "MSOP staff to confiscate newspaper articles regarding the MSOP and the constitutionality of the program . . . which Plaintiff typed, printed, and distributed to other clients throughout the facility." (Id.).

Plaintiff asserts that he has tried to resolve the present issue regarding the confiscation of "legal documents" with Defendants, "especially Defendant Geil, because she is the 'legal liaison' for [the] MSOP." (Id. at ¶ 22). Plaintiff, however, also asserts that these attempts at resolution "have utterly failed." (Id.).

Plaintiff requests as relief (1) declaratory relief declaring his Constitutional rights; (2) "preliminary and permanent injunctions requiring Defendants to provide all Constitutional rights

to which Plaintiff is entitled;" (3) "compensatory, monetary damages in amounts to be determined by the jury at trial;" and (4) injunctive relief "enjoining Defendants from future and further denial of assisting other clients in the preparation of legal documents/motions/letters etc. to the courts and/or attorneys." (Id. at V. Relief).

## II.   DEFENDANTS' MOTIONS TO DISMISS. [Docket Nos. 10, 22].

Defendants now seek an Order of the Court dismissing Plaintiff's Complaint for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Mots. to Dismiss [Docket Nos. 10, 22]).[5]

### A.  Standard of Review

When evaluating a motion to dismiss under Rule 12(b)(6), courts "look only to the facts alleged in the complaint and construe those facts in the light most favorable to the plaintiff." Riley v. St. Louis Cty. of Mo., 153 F.3d 627, 629 (8th Cir. 1998) (citing Double D Spotting Serv., Inc. v. Supervalu, Inc., 136 F.3d 554, 556 (8th Cir 1998)), cert. denied 525 U.S. 1178 (1999). Courts must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. Aten v. Scottsdale Ins. Co., 511 F. 3d 818, 820 (8th Cir. 2008). Although the factual allegations in the complaint need not be detailed, they must be sufficient to "raise a right to relief above the speculative level," which "requires more than labels

---

[5] Defendants' first Motion to Dismiss, [Docket No. 10], was brought by all Defendants in their official capacities and the following Defendants in their individual capacities: Emily Johnson Piper, Cindy Cherro, Shelby Hall, Allison Collins, Heidi Menard, Jessica Geil, and Jordan Goodman. Defendants Shannon Draves and Cheryl Floren did not join that motion in their individual capacities as they had yet to be served in their individual capacities. Subsequently, Defendants Shannon Draves and Cheryl Floren, in their individual capacity, filed a Motion to Dismiss. [Docket No. 22]. In their memorandum accompanying that motion, Defendants explained that their arguments reflect the arguments raised in Defendants' first motion to dismiss.

The parties agreed that no additional briefing was necessary related to Defendants' second motion to dismiss. Therefore, the Court took both motions under advisement at the same time, and it informed the parties it would issue a single report and recommendation. Therefore, as the arguments and issues are the same in both motions, the Court considers those motions together.

and conclusions, and a formulistic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

The complaint must "state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556–57). When courts undertake the "context-specific task" of determining whether a plaintiff's allegations "nudge" its claims against a defendant "across the line from conceivable to plausible," they may disregard legal conclusions that are couched as factual allegations. See, Iqbal, 556 U.S. at 678–81.

*Pro se* complaints are construed liberally, but they still must allege sufficient facts to support the claims advanced. See, Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004). Section 1983 establishes a cause of action against any "person who, under the color of any statute, ordinance, regulation, custom, or usage, of any state" causes the deprivation of a federal or Constitutional right. 42 U.S.C. § 1983.

## B. Analysis

To state a claim upon which relief may be granted pursuant to 42 U.S.C. § 1983, "a plaintiff must [allege] (1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right." McDonald v. City of Saint Paul, 679 F.3d 698, 704 (8th Cir. 2012) (quoting Shrum ex rel Kelly v. Kluck, 249 F.3d 773, 777 (8th Cir. 2001) (citations omitted)). A plaintiff must plead facts sufficient to demonstrate that an individual defendant was *directly* and *personally* involved in an

alleged *constitutional violation*. Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985); Clemmons v. Armontrout, 477 F.3d 962, 967 (8th Cir. 2007) ("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendants, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights.").[6]

In addition to pleading individual involvement, a plaintiff must sufficiently plead a *violation of a specific constitutional right*.

### 1.   Official capacity claims

As a threshold jurisdictional consideration, the Eleventh Amendment prohibits an action for monetary damages against a state unless it has unequivocally consented to suit or Congress has abrogated the states' immunity for a particular federal cause of action. Hadley v. North Arkansas Community Technical College, 76 F.3d 1437, 1438 (8th Cir. 1996); Faibish v. University of Minnesota, 304 F.3d 797, 200 (8th Cir. 2002). States are entitled to Eleventh Amendment immunity from federal claims brought under Section 1983. Hadley, 76 F.3d at 1438 ("Section 1983 does not override Eleventh Amendment immunity.").

The immunity afforded a state in federal court extends to agencies of the state. Minnesota Pharmacists Ass'n v. Pawlenty, 690 F. Supp. 2d 809, 815 (D. Minn. 2010) (citing Florida Dep't of Health & Rehabilitative Sers. v. Florida Nursing Home Ass'n, 450 U.S. 147, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1982)). Similarly, a suit against a state employee in that person's official capacity constitutes a suit against the public employer, namely, the state itself. Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999) (citing Kentucky v. Graham, 473 U.S. 159, 165 (1985)); see also, Uland v. City of Winsted, 570 F. Supp. 2d 1114, 1119–20 (D. Minn.

---

[6] Claims premised on a theory of vicarious liability do *not* state a claim for relief pursuant to 42 U.S.C. § 1983, Beard v. Lockhart, 716 F.2d 544, 545 (8th Cir. 1983), as the doctrine of *respondeat superior* does not apply in Section 1983 actions. Monell v. Dep't of Soc. Servs., 436 U.S. 659, 691 (1978).

2008) (citing <u>Baker v. Chisom</u>, 501 F.3d 920, 924 (8th Cir. 2007); <u>Bankhead v. Knickrehm</u>, 360 F.3d 839, 844 (8th Cir. 2004)). "The law is clear that, 'the real party in interest in an official capacity suit is the governmental entity and not the named official.'" <u>Semler v. Ludeman</u>, No. 09-cv-0732 (ADM/SRN), 2010 WL 145275, at *6 (D. Minn. Jan 8, 2010) (citing <u>Baker</u>, 501 F.3d at 925 (quoting <u>Hafer v. Melo</u>, 502 U.S. 21, 25 (1999))). "It is well-settled that in a 42 U.S.C. § 1983 action, the Eleventh Amendment precluded an award of money damages against a state official acting in his or her official capacity. A plaintiff may maintain an action against a governmental official if the complaint seeks only injunctive or prospective relief." <u>Semler</u>, 2010 WL 145275, at *7 (citations omitted).

As employees of the MSOP and the Minnesota Department of Human Services, the Defendants are state officials. <u>See</u>, <u>Id.</u>; <u>Daniels v. Jesson</u>, No. 13-cv-736, (JNE/SER), 2014 WL 3629874, at *5 (D. Minn. July 22, 2014). The Court, therefore, necessarily construes Plaintiff's alleged Section 1983 official capacity claims against the Defendants as being alleged against the employing entity, i.e., the State of Minnesota.

Liberally construing Plaintiff's Complaint and making the all reasonable inferences in his favor, the present record before the Court is still devoid of any evidence or authority demonstrating either the state's consent to suit or Congressional abrogation of the state's sovereign immunity.

Therefore, the Court recommends that Plaintiff's Section 1983 claims seeking monetary damages as alleged against the Defendants sued in their official capacities be **DISMISSED with prejudice** for lack of subject matter jurisdiction. <u>See</u>, <u>Semler</u>, 2010 WL 145275, at *7 ("[T]o the extent that Plaintiffs seeks monetary damages for actions taken by Defendants in their official capacities, these claims against Defendants are barred by the Eleventh Amendment[.]").

Dismissing Plaintiff's claims for monetary damages against the named Defendants in their official capacities leaves Plaintiff's official capacity claims for injunctive and declaratory relief as well as his individual capacity claims for monetary damages, injunctive relief, and declaratory relief against Defendants Piper, Cherro, Hall, Collins, Menard, Geil, Draves, Floren, and Goodman for the Court's further consideration.

### 2.  Defendant Piper

Plaintiff alleges that Defendant Piper is current Commissioner of the Minnesota Department of Human Services, and therefore, she is automatically substituted for former-commissioner Lucinda Jesson. (Compl., [Docket No. 1], at ¶ 8 n. 2). Plaintiff makes no other allegations regarding Defendant Piper. (See, Id.).

A state official, however, cannot be vicariously liable for the acts of her subordinates under the doctrine of respondent superior, unless she was personally involved in, or participated in the unconstitutional acts. See, Rizzo v. Goode, 423 U.S. 362, 371 (1976); Clemmons v. Armontrout, 477 F.3d 962, 967 (8th Cir. 2007); Estate of Rosenberg by Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995). Defendants are liable for their personal acts only, however liability may follow if a supervisor "failed to properly train, supervise, direct or control the actions of a subordinate who causes the injury." Pearl v. Dobbs, 649 F.2d 608, 609 (8th Cir. 1981). A plaintiff must show an affirmative link between the misconduct and the adoption of any plan or policy by the defendant showing the authorization or approval of such conduct. Clemmons, 477 F.3d at 967; see, Rizzo, 423 U.S. at 371; Ouztz v. Cummins, 825 F.2d 1276, 1277 (8th Cir. 1987).

Regarding Defendant Piper, Plaintiff makes only the barest of allegations. As noted above, Plaintiff only alleges that Defendant Piper is the current Commissioner of the Minnesota

Department of Human Services. (Compl., [Docket No. 1], at ¶¶ 6(b), 8 n. 2). Plaintiff fails to state in any way how Defendant Piper was personally involved or participated in the alleged unconstitutional acts. (See, Id.). Notably, Plaintiff has not alleged that Defendant Piper failed to train, supervise, direct, or control the actions of any subordinate who allegedly caused injury, so that Defendant Piper could be directly linked to the alleged constitutional violations.

Accordingly, it is recommended that all of Plaintiff's claims against Defendant Piper be **DISMISSED without prejudice** for failure to state a claim upon which relief may be granted.

Dismissing all of Plaintiff's claims against Defendant Piper leaves Plaintiff's official capacity claims for injunctive and declaratory relief as well as his individual capacity claims for monetary damages, injunctive relief, and declaratory relief against Defendants Cherro, Hall, Collins, Menard, Geil, Draves, Floren, and Goodman for the Court's further consideration.

### 3.  Plaintiff's First Amendment Claims

Plaintiff's Complaint makes reference to four possible ways in which Defendants violated his First Amendment rights. (Compl. [Docket No. 1]). Plaintiff conclusorily alleges that Defendants have violated his First Amendment rights of "access to the Courts, access to the press, and Free Speech[.]" (See, e.g., Compl., [Docket No. 1], at ¶ 2, 9, 11). Plaintiff also alleges that Defendants have retaliated against him for being a "'jailhouse lawyer' . . . [and] for providing legal assistance to other clients" in violation of Plaintiff's First Amendment rights. (Id. at ¶ 23). The Court addresses each of these claims in turn.

### i.  Right of Access to the Courts

Plaintiff asserts that the Defendants' actions of confiscating legal documents from Plaintiff and thereby restricting his ability to be a "jailhouse lawyer" impeded Plaintiff's right of access to the courts under the First Amendment. (Compl., [Docket No. 1], at ¶ 2).

Under the First Amendment, the freedom to petition includes the right of access to the courts. See, BE & K Const. Co. v. N.L.R.B., 536 U.S. 516, 524–25 (2002); Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 741 (1983). The due process clause of the Fourteenth Amendment makes the First Amendment applicable to the states. Republican Party of Minnesota v. White, 416 F.3d 738, 748 (8th Cir. 2005). To state a claim for relief, a plaintiff must allege the he suffered an actual injury caused by the alleged limited access, such as the inability to file a complaint or the dismissal of a claim. See, Lewis v. Casey, 518 U.S. 343, 351 (1996); White v. Kautzky, 494 F.3d 677, 680 (8th Cir. 2007) (providing that to prove actual injury a plaintiff must "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded"). Plaintiff must show that the alleged deprivations actually hindered his efforts to pursue a legal claim. Beaulieu v. Ludeman, No. 7-cv-1535 (JMR/JSM), 2008 WL 2498241, at *18 (D. Minn. June 18, 2008). This showing of prejudice is required of pretrial detainees, as well as prisoners. See, Thomsen v. Ross, 368 F. Supp. 2d 961, 974 (D. Minn. 2005).

Plaintiff has not asserted any factual allegations demonstrating that Defendants' actions resulted in actual harm or injury, such as the loss or rejection of a nonfrivolous legal claim. See, Beaulieu, 2008 WL 2498241, at *18. While Plaintiff's Complaint makes various references to the right of access to courts and the preparation of legal documents for the courts, the Complaint lacks any reference to Plaintiff's own legal documents or any incident preventing Plaintiff from raising a legal claim of his own. (See, Compl. [Docket No. 1]). Instead, Plaintiff's Complaint only refers to the legal documents of other MSOP clients. (See, e.g., Id. at ¶¶ 9, 11, 12, 17). A reading of Plaintiff's Complaint as a whole makes clear that he raises no allegations that Defendants impeded Plaintiff's own access to the court to raise a legal claim of his own. (See, Id.). Plaintiff's ostensibly admits this fact in his Complaint stating that "[d]ue to the actions of

Defendants, it leaves other clients who Plaintiff assists without an alternative means of access to the courts." (Id. at ¶ 22). Plaintiff, however, expressly states that in the present Complaint he "is not arguing, acting, or representing any other client that he has assisted." (Id.).[7] Plaintiff fails to allege any facts demonstrating that Defendants' actions resulted in actual harm or injury to Plaintiff's right to access the court.

Therefore, the Court recommends **DISMISSING without prejudice** Plaintiff's First Amendment access to courts claim for monetary damages, injunctive relief, and declaratory relief against the named Defendants in their individual capacities as well as his First Amendment access to courts claim for injunctive and declaratory relief against Defendants in their official capacities for failure to sufficiently state a claim that his right of access to courts was violated.

### ii. Right of Access to the Press

Plaintiff also appears to allege that Defendants' actions violated Plaintiff's right to access the press under the First Amendment. (See, e.g., Compl., [Docket No. 1], at ¶¶ 2, 9, 10, 11, 12).

As noted above, to state a claim upon which relief may be granted pursuant to 42 U.S.C. § 1983, "a plaintiff must [allege] (1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right." McDonald, 679 F.3d at 704. A plaintiff must plead facts sufficient to demonstrate that an individual defendant was directly and personally involved in an alleged constitutional violation. Clemmons, 477 F.3d at 967.

The only statements in Plaintiff's Complaint regarding his right to access the press is Plaintiff conclusory statement—repeated throughout his Complaint—that Defendants' actions

---

[7] To the extent Plaintiff's Complaint could be generously and liberally construed as purporting to raise a claim on behalf of the MSOP clients he had assisted that claim would fail as a matter of law as Plaintiff has failed to provide any specific factual support as to why those clients could not bring the claim themselves or even identify the clients he had assisted. See, Hamm v. Groose, 15 F.3d 110 (8th Cir. 1994) ("Our cases are clear that an inmate cannot bring a denial-of-access claim on behalf of another inmate who is able to bring such a claim in his or her own name.").

"violated Plaintiff's First Amendment (access to Courts, *access to the press*, and Free Speech), Fourth Amendment (illegal search and seizure), Fourteenth Amendment (due process, procedural due process[,] and substantive due process) rights." (See, e.g., Compl., [Docket No. 1], at ¶¶ 9, 10, 11, 12) (emphasis added). Plaintiff alleges no facts in his Complaint demonstrating that he attempted to contact the press at any point, that any member of the press attempted to contact him, or that he has interacted with the press in any way. (See, Compl. [Docket No. 1]). Plaintiff's Complaint lacks any factual reference to any member of the press whatsoever. (See, Id.).[8]

The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555. "A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." Iqbal, 556 U.S. at 664. Plaintiff's assertion of a violation of his right to access the press under the First Amendment is a mere legal conclusion and, as such, it does not satisfy Iqbal or Twombly. See, Barton v. Taber, 820 F.3d 958, 963–64 (8th Cir. 2016) (accepting facts but not mere legal conclusions alleged in the complaint as true for purposes of a Rule 12(b)(6) motion); Hager v. Arkansas Dept. of Health, 735 F.3d 1009, 1014–15 (8th Cir. 2013) (finding plaintiff had not stated a § 1983 claim for gender discrimination because her allegation that she was discharged under circumstances in which men were not was a legal conclusion couched as a factual allegation, which need not be accepted as true under Twombly); Walker v.

---

[8] The only other possible reference in Plaintiff's Complaint that could be construed as related to the press is Plaintiff's assertion that "Defendant Geil has also directed MSOP staff to confiscate newspaper articles regarding MSOP and the constitutionality of the program. *See Karsjens et al v. Jesson et al*, Court File No.: 11-3659 (DWF/JJK) which Plaintiff typed, printed, and distributed to other clients throughout the facility." (Compl., [Docket No. 1], at ¶ 24). However, even if construed liberally, this allegation does not concern Plaintiff's right to access the press or his right to have the press be allowed access to him. Instead, this allegation appears to concern Plaintiff's ability to write and distribute articles himself. This allegation is better discussed below in the context of Plaintiff's free speech claim.

Barrett, 650 F.3d 1198, 1209 (8th Cir. 2011) ("[L]egal conclusions, without any supporting factual allegations, are insufficient to survive a motion to dismiss.").

In the present case, even liberally construing the pro se Complaint, taking all the facts pled within as true, and making all reasonable inferences in Plaintiff's favor, the mere legal conclusions related to a claim that Defendants' actions violated Plaintiff's right to access the press under the First Amendment do not nudge the claim "across the line from conceivable to plausible." See, Iqbal, 556 U.S. at 678–81. The Complaint simply does not contain sufficient factual allegations to support a facially plausible claim that Plaintiff's right to access the press was violated.

Accordingly, the Court recommends **DISMISSING without prejudice** Plaintiff's First Amendment right to access the press claim for monetary damages, injunctive relief, and declaratory relief against the named Defendants in their individual capacities as well as his First Amendment right to access the press claim for injunctive and declaratory relief against Defendants in their official capacities for failure to sufficiently state a claim that his right to access the press was violated.

### iii.   Right to Free Speech Under the First Amendment

Plaintiff also generally alleges that Defendants' actions violate Plaintiff's right to free speech under the First Amendment. (See, e.g., Compl., [Docket No. 1], at ¶¶ 9, 10, 11, 12) (stating that "Defendants' actions "violated Plaintiff's First Amendment (access to Courts, access to the press, and *Free Speech*), Fourth Amendment (illegal search and seizure), Fourteenth Amendment (due process, procedural due process[,] and substantive due process) rights") (emphasis added).

The right to free speech includes "the right to utter or to print, . . . the right to distribute, the right to receive, the right to read," and the freedom of inquiry and thought. <u>Griswold v. Connecticut</u>, 381 U.S. 479, 482 (1965). Although civilly committed individuals are entitled to this First Amendment protection, "[a]ny form of involuntary confinement, whether incarceration or involuntary commitment, may necessitate restrictions on the right to free speech." <u>Beaulieu v. Ludeman</u>, 690 F.3d 1017, 1039 (8th Cir. 2012). While Plaintiff is not a prisoner, "his confinement is subject to the same safety and security concerns as that of a prisoner." <u>Revels v. Vincenz</u>, 382 F.3d 870, 874 (8th Cir. 2004). As such, even though the MSOP civil committees like Plaintiff are not prisoners, courts have evaluated MSOP civil committees' First Amendment claims under the guidelines established in <u>Turner v. Safley</u>, 482 U.S. 78 (1987). <u>See</u>, <u>Beaulieu</u>, 690 F.3d at 1039–41; <u>Banks v. Ludeman</u>, No. 8-cv-5792 (MJD/JJK), 2010 WL 4822892, at *9 (D. Minn. Oct. 4, 2010), <u>report and recommendation adopted</u> 2010 WL 4822888 (D. Minn. Nov. 22, 2010); <u>Semler v. Ludeman</u>, 9-cv-732 (ADM/SRN), 2010 WL 145275, at *8 (D. Minn. Jan. 8, 2010).

In <u>Turner</u>, the United States Supreme Court held that a prison regulation impinging on inmates' constitutional rights is valid "if it is reasonably related to legitimate penological interest[.]" 482 U.S. at 89. <u>Turner</u> identified four factors that are to be considered when evaluating a detainee's First Amendment challenge to institutional regulations, policies, and practice:

> (1) whether there is a valid rational connection between the regulation and the legitimate government interest it purports to further; (2) whether the inmate has an alternative means of exercising his constitutional right; (3) the impact that accommodation of the inmate's right would have upon others, including inmates as well as non-inmates; and (4) the absences of a ready alternative to the regulation.

Ortiz v. Fort Dodge Corr. Facility, 368 F.3d 1024, 1026 (8th Cir. 2004). The plaintiff bears the burden of proving that the Turner criteria should be resolved in his favor. Abdullah v. Gunter, 949 F.2d 1032, 1035 (8th Cir. 1991).

Plaintiff's factual allegations in support of his freedom of speech claims are minimal, and the Court has a difficult time properly construing the minimal factual allegations as showing any viable First Amendment Section 1983 claim. Plaintiff only makes two assertions which could be liberally construed as attempting to assert an allegation of Defendants violating Plaintiff's right to freedom of speech under the First Amendment. Plaintiff asserts that "[t]he ongoing actions of Defendants also constitute a violation [of] Plaintiff['s] First Amendment right to be free from censorship, because of the fact that once they see that Plaintiff's name is not on the documents, they secure it and send it to [the] Office of Special Investigations (OSI)." (Compl., [Docket No. 1], at ¶ 22). While Plaintiff does not specify the documents to which he is referring, it is reasonable to infer that Plaintiff's reference to "documents" is a reference to the legal documents with the name of other civil committees to which Plaintiff refers throughout his Complaint. (See, e.g., Id. at ¶ 10, 22).

Plaintiff also asserts that Defendant Geil has "directed the MSOP staff to confiscate newspaper articles regarding [the] MSOP and the constitutionality of the program. *See Karsjens et al v. Jesson et al.*, Court File No.: 11-3659 (DWF/JJK) which Plaintiff typed, printed, and distributed to other clients throughout the facility." (Compl., [Docket No. 1], at ¶ 24). It is unclear from Plaintiff's allegation the type of document Defendant Geil allegedly directed the MSOP staff to confiscate. (See, Id.). Plaintiff refers to "newspaper articles" but also states that they were "typed, printed, and distributed" by Plaintiff to other clients throughout the MSOP. (Id.). As such, it is unclear whether the articles are from a newspaper or are articles authored by

17

Plaintiff. In any event, the content of the articles is not pled except a reference to "*Karjens et al. v. Jesson et al.*, Court File No.: 11-3659 (DWF/JJK)[.]" (Id.).[9] Moreover, it is unclear from Plaintiff's Complaint whether the articles were confiscated from other MSOP civil committees or from Plaintiff's possession. (See, Id.).

In short, Plaintiff's allegations that his right of freedom of speech are at best minimal, conclusory, and ultimately insufficient to sustain a Section 1983 claim. While Plaintiff's Complaint could be construed as alleging that Defendants have a practice or policy of confiscating materials from Plaintiff based on the content of those materials, Plaintiff's Complaint only does so in the most conclusory fashion, and Plaintiff fails to sufficiently articulate how the subject speech is protected[10] or how the Defendants' response was unconstitutional, as "restrictions on prisoners' communications to other inmates are constitutional if the restrictions are 'reasonably related to legitimate penological interest.'" Shaw v. Murphy, 532 U.S. 223, 225 (2001) (citation omitted). Importantly, the Court notes that Plaintiff does not properly plead facts regarding the alleged confiscation of the "newspaper articles" nor does he plead that he has the permission of the other MSOP civil committees to prepare legal documents on their behalf. Plaintiff only conclusorily asserts that he "obviously would not be preparing legal documents for other clients unless requested by them to do so." (Compl., [Docket No. 1], ¶ 23). Plaintiff's Complaint specifically asserts that Defendants were attempting to verify with the other MSOP civil committees that Plaintiff had permission to

---

[9] Case Number 11-cv-3659 is actually entitled Karsjens, et al. v. Minnesota Department of Human Services, et al., 11-cv-3659 (DWF/TNL).

[10] To the extent Plaintiff relies on "*Johnson v. Avery*, a 1969 U.S. Supreme Court case" for the proposition that his speech is protected because he is a "jailhouse lawyer" assisting others in legal matters, that reliance is misplaced. (See, Compl., [Docket No. 1], at ¶¶ 12, 20–22). The United States Supreme Court has specifically held that Turner does not permit "an increase in constitutional protection whenever a prisoner's communication includes legal advice" because "the Turner test, by its terms, simply does not accommodate valuations of content." Shaw, 532 U.S. at 230.

possess their legal documents, (see, Compl., [Docket No. 1], at ¶ 12), but Plaintiff makes no assertions that he actually had such permission. (Id.).

Moreover, federal courts have not traditionally intervened in the internal affairs of confinement facilities and instead "adopted a broad hands-off attitude toward problems of prison administration." Id. at 228 (quoting Procunier v. Martinez, 416 U.S. 396, 404 (1974)). "[T]he constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large. In the First Amendment context, for instance, some rights are simply inconsistent with the status of a prisoner or with the legitimate penological objectives of the corrections system." Shaw, 532 U.S. at 229 (citation omitted). Plaintiff's assertions "that any restrictions of Plaintiff's assisting other clients within the facility, are unconstitutional, and are not related to a legitimate penological interest" or that "Plaintiff has alleged facts that would support finding it is objectively unreasonable for Defendants to place any kind of restrictions against Plaintiff assisting MSOP 'clients' with legal matters" are mere legal conclusions couched as factual allegations. As such, the Court is not bound to accept them as true. See, Twombly, 550 U.S. at 555; Iqbal, 556 U.S. at 664; Barton, 820 F.3d at 963–64; Hager v. Arkansas Dept. of Health, 735 F.3d 1009, 1014–15 (8th Cir. 2013); Walker, 650 F.3d at 1209. Without alleging how Defendants' actions were not reasonably related to a legitimate interest, Plaintiff fails to articulate any viable First Amendment violation. Plaintiff's self-entitled First Amendment claims are simply not actionable as alleged.

Therefore, the Court recommends **DISMISSING without prejudice** Plaintiff's First Amendment right to free speech claim for monetary damages, injunctive relief, and declaratory relief against the named Defendants in their individual capacities as well as his First Amendment

right to free speech claim for injunctive and declaratory relief against Defendants in their official capacities for failure to sufficiently state a claim that his right to free speech was violated.

### iv.  Plaintiff's First Amendment Retaliation Claim

Plaintiff further alleges that he "has a constitutional right to help assist other clients in the preparation of documents to be filed with the courts" and that under the "First Amendment . . . [Defendants] are prohibited from retaliating against a 'jailhouse lawyer,' but that "Defendants have retaliated against Plaintiff for that exact reason." (Compl., [Docket No. 1], at ¶ 23). Plaintiff alleges that collectively Defendants have retaliated against him by placing restrictions in his Individual Treatment Program that he cannot print anything with another clients name on it, confiscating legal documents with other clients names on them, searching his room for such documents, and informing Plaintiff that he has to have the permission of the other clients before he can print documents with their name on it. (Id.).

To state a claim for retaliation in violation of the First Amendment, "a plaintiff must show: (1) he engaged in a protected activity; (2) a government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) the adverse action was motivated at least in part by the protected activity." Evenstad v. Herberg, 994 F. Supp. 2d 995, 1000 (D. Minn. 2014) (citing Revels v. Vincenz, 382 F.3d 870, 876 (8th Cir. 2004)). "Failure to satisfy any of the three elements results in the failure of the claim." Evenstad, 994 F. Supp. 2d  at 1000 (citing Higdon v. Jackson, 393 F.3d 1211, 1219 (11th Cir. 2004)); see also Beaulieu, 690 F.3d at 1025. "[C]ivilly committed persons retain their First Amendment rights to exercise the freedom of speech and to seek redress of grievances[.]" Evenstad, 994 F. Supp. 2d at 1001.

Plaintiff's factual allegations in support of his "retaliation" claim are again minimal, and the Court has a difficult time properly construing the minimal factual allegations as showing any viable First Amendment retaliation claim. Liberally construing Plaintiff's claim, Plaintiff merely concludes that he is being retaliated against because he is attempting to help others as a "jailhouse lawyer." (See, Compl., [Docket No. 23]). Plaintiff's allegations of "retaliation" are conclusory and ultimately insufficient to sustain a Section 1983 claim.

Plaintiff fails to articulate a protected activity in which he was engaged. As noted above, Plaintiff's claim that his activities as a "jailhouse lawyer" are constitutionally protected by the mere fact that he is a "jailhouse lawyer" communicating about legal matters is contrary to the law. The United States Supreme Court has specifically held that Turner does not permit "an increase in constitutional protection whenever a prisoner's communication includes legal advice" because "the Turner test, by its terms, simply does not accommodate valuations of content." Shaw, 532 U.S. at 230. Plaintiff's speech is not deemed protected simply because it may contain legal advice or because he is attempting to assist others in legal matters. See, Id. Plaintiff alleged no other purportedly protected activity in which he was engaged. Moreover, as noted above, Plaintiff does not affirmatively plead facts that demonstrate he had the permission of the other MSOP civil committees to prepare legal documents on their behalf. As a result of Plaintiff failing to plead facts demonstrating that he was engaged in a protective activity, he has failed to properly plead facts demonstrating a Section 1983 First Amendment retaliation claim.

Even assuming Plaintiff had sufficiently pled engagement in a protective activity and adverse action taken against him, Plaintiff fails to plead sufficient facts that would plausibly tend to suggest any casual connection between the two. Plaintiffs allege no specific facts demonstrating that Defendants' purportedly adverse actions were motivated by any protected

activity as opposed to a simple rules violation. This is especially true given that Plaintiff pleads no facts demonstrating that he had permission to prepare the legal documents or that he told Defendants that he had the permission of the other civil committees to prepare the legal documents with their names on them. See, Osborne v. Grussing, 477 F.3d 1002, 1005 (8th Cir. 2007) ("To prevail in an action for First Amendment retaliation, plaintiff must show a causal connection between a defendant's retaliatory animus and plaintiff's subsequent injury.").

As a result of Plaintiff's failure to plead a protected activity in which he was engaged and purely conclusory allegations of causation, Plaintiff fails to allege any First Amendment retaliation claim. Therefore, the Court recommends **DISMISSING without prejudice** Plaintiff's First Amendment retaliation claim for monetary damages, injunctive relief, and declaratory relief against the named Defendants in their individual capacities as well as his First Amendment retaliation claim for injunctive and declaratory relief against Defendants in their official capacities for failure to sufficiently state a claim that his right to be free from retaliation was violated.

### 4. Plaintiff's Fourth Amendment Claim

Plaintiff also appears to allege that Defendants' actions violated Plaintiff's right under the Fourth Amendment to be free from unreasonable searches and seizures. (See, e.g., Compl., [Docket No. 1], at ¶¶ 2, 9, 10, 11, 12).

As noted above, to state a claim upon which relief may be granted pursuant to 42 U.S.C. § 1983, "a plaintiff must [allege] (1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right." McDonald, 679 F.3d at 704. A plaintiff must plead facts sufficient to demonstrate that an

individual defendant was directly and personally involved in an alleged constitutional violation. Clemmons, 477 F.3d at 967.

Under the Fourth Amendment, "[t]he right of the people to be secure in their persons, houses, paper, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. "Involuntary civilly committed persons retain the Fourth Amendment right to the free from unreasonable searches that is analogous to the right retained by pretrial detainees." Arnzen v. Palmer, 713 F.3d 369, 372 (8th Cir. 2013) (quoting Beaulieu v. Ludeman, 690 F.3d 1017, 1028 (8th Cir. 2012)). To determine "reasonableness" in an institutional setting, a court must balance "the need for the particular search against the invasion of personal rights that the search entails." Bell v. Wolfish, 441 U.S. 520, 558–59 (1979). In applying the balance test, a court must consider: (1) the scope of the particular intrusion; (2) the manner in which the search is conducted; (3) the justification for initiating the search; and (4) the place in which the search is conducted. See, Id. at 559; Serna v. Goodno, 567 F.3d 944, 949 (8th Cir. 2009) (quoting the Bell balancing test). A court must defer to the judgment of the correctional or institutional official "unless the record contains substantial evidence showing their policies are an unnecessary or unjustified response to problems of institutional security." Arnzen, 713 F.3d at 373 (quoting Beaulieu, 690 F.3d at 1029).

The only statements in Plaintiff's Complaint referencing his Fourth Amendment rights is Plaintiff conclusory statement—repeated throughout his Complaint—that Defendants' actions "violated Plaintiff's First Amendment (access to Courts, access to the press, and Free Speech), *Fourth Amendment (illegal search and seizure)*, Fourteenth Amendment (due process, procedural due process[,] and substantive due process) rights."  (See, e.g., Compl., [Docket No. 1], at ¶¶ 9, 10, 11, 12) (emphasis added). He presents no argument about his Fourth Amendment

rights; his Complaint is centered around what he believes is his constitutional right to be a "jailhouse lawyer." (See, Id.).

As noted above, Plaintiff does generically and conclusorily allege that Defendants have retaliated against him in the form of "room searches, and when Plaintiff has been found to have another client's legal documents in his room, those documents are secured and sent to OSI[.]" (Id. at ¶ 23). However, Plaintiff pleads no facts about a specific search that occurred or the circumstances surrounding any alleged search that may have occurred.

In the present case, even liberally construing the pro se Complaint, taking all the facts pled within as true, and making all reasonable inferences in Plaintiff's favor, the factual allegations related to a claim that a search of Plaintiff's room violated Plaintiff's Fourth Amendment rights do not nudge the claim "across the line from conceivable to plausible." See, Iqbal, 556 U.S. at 678–81. The Complaint simply does not contain sufficient factual allegations to support a facially plausible claim that a generically-referenced search of Plaintiff's room violated his Fourth Amendment rights. There are no facts which would allow this Court to evaluate the scope of the search, the manner in which it was conducted, or the MSOP officials' justification for initiating the search under the Bell balancing test. Plaintiff only alleges that a search occurred at some point and other MSOP civil committees' legal documents were confiscated. Even if the Court were to consider Plaintiff's claim related to the search as a plausible claim, Plaintiff provides no facts about the search demonstrating substantial evidence that the MSOP search policy was an unnecessary or unjustified response to a problem of institutional security. See, Arnzen, 713 F.3d at 373. As such, based on the present record, the Court must defer to the judgment of the MSOP officials. See, Id.

Plaintiff also makes generic assertions throughout his Complaint that the legal documents of other MSOP civil committees were confiscated off of the unit printer and allegedly sent to the Office of Special Investigations. (See, Compl., [Docket No. 1], at ¶¶ 11, 17).[11] Plaintiff does not plead facts alleging the manner in which the documents were confiscated; where the unit printer (from which the documents were allegedly confiscated) was located; or as noted above, that he actually had permission to prepare and possess the legal document on behalf of other MSOP civil committees. (See, Id.). Without Plaintiff alleging he had permission to possess legal documents which contained the names of other MSOP civil committees, the Court cannot not assume that he had such permission by supplying that additional fact. See, e.g., Dunn v. White, 880 F.2d 1188, 1197 (10th Cir. 1989) (regarding a pro se plaintiff, "we will not supply additional facts, nor will we construct a legal theory for plaintiff that assumes facts that have not been plead").

Moreover, as Plaintiff does not allege the location of the printer inside the MSOP, except to say it was in his living unit, the Court cannot assume that the printed documents were in Plaintiff's possession when they were confiscated, i.e. the documents could have printed to the printer and then were supposed to be given to Plaintiff by the staff but were determined to be materials Plaintiff was not allowed to possess due to the documents being legal documents in the name of other MSOP civil committees. Plaintiff's Complaint fails to allege if the MSOP staff simply saw the documents on the printer or went through documents in Plaintiff's possession to confiscate those which they determined needed to be confiscated. Without this information the Court cannot evaluate the scope of the particular intrusion or the manner in which the search was conducted. Any attempt at such an evaluation would require pure speculation by the Court.

---

[11] As Plaintiff specifically asserts that the legal documents confiscated were the documents of other civil committees, the Court finds it doubtful that Plaintiff has standing to pursue a Fourth Amendment violation based on the confiscation of materials which were not his and which he does not actually plead that he had permission to prepare or possess.

Plaintiff does not make any factual allegations which would allow the Court to reasonably infer the scope of the alleged seizures or the manner in which they were conducted.

In short, Plaintiff has plead insufficient facts which would allow the Court to make any reasonable inference demonstrating that the record contains substantial evidence showing the purported MSOP practice of confiscating the legal documents of other MSOP civil committees from Plaintiff is an unnecessary or unjustified response to the issue of protecting the privacy of MSOP civil committees.

Accordingly, the Court recommends **DISMISSING without prejudice** Plaintiff's Fourth Amendment claims for monetary damages, injunctive relief, and declaratory relief against the named Defendants in their individual capacities as well as his Fourth Amendment claims for injunctive and declaratory relief against Defendants in their official capacities for failure to sufficiently state a claim that his Fourth Amendment rights were violated.

### 5.   Plaintiff's Due Process Claims

Plaintiff also appears to allege that Defendants' actions violated Plaintiff's right to due process under the Fourteenth Amendment. (See, e.g., Compl., [Docket No. 1], at ¶¶ 2, 9, 10, 11, 12).

As noted above, to state a claim upon which relief may be granted pursuant to 42 U.S.C. § 1983, "a plaintiff must [allege] (1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right." McDonald, 679 F.3d at 704.

The only statement in Plaintiff's Complaint referencing his Fourteenth Amendment due process rights is Plaintiff conclusory statement—repeated throughout his Complaint—that Defendants' actions "violated Plaintiff's First Amendment (access to Courts, access to the press,

and Free Speech), Fourth Amendment (illegal search and seizure), *Fourteenth Amendment (due process, procedural due process[,] and substantive due process) rights*."   (See, e.g., Compl., [Docket No. 1], at ¶¶ 9, 10, 11, 12) (emphasis added). He presents no argument about his due process rights; as noted above, his Complaint is centered around what he believes is his constitutional right to be a "jailhouse lawyer." (See, Id.).

### i. Procedural Due Process

Plaintiff does not identify a particular procedural due process violation. (See, Compl. [Docket No. 1]).

> To set forth a procedural due process violation, a plaintiff, first, must establish that his protected liberty or property interest is at stake. Second, the plaintiff must prove that the defendant[s] deprived him of such an interest without due process of law. Due process is a flexible concept, requiring only such procedural protections as the particular situation demands. The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.

Schmidt v. Des Moines Public Schs., 655 F.3d 811, 817–18 (8th Cir. 2011) (citations and quotations omitted).

"We need reach the question of what process is due only if the inmates establish a constitutionally protected liberty interest;" where no liberty or property interest is identified, a procedural due process claim necessarily fails. See, Bealieu v. Ludeman, 690 F.3d 1017, 1047 (8th Cir. 2012) (quoting Wilkinson v. Austin, 545 U.S. 209, 221 (2005)). If Plaintiff does have a protected interest, the Court "then consider[s] what process is due by balancing the specific interest that was affected, the likelihood that the [MSOP] procedures would result in an erroneous deprivation, and the [MSOP's] interest in providing the process that it did, including the administrative costs and burdens of providing additional process." Senty-Haugen v. Goodno, 462 F.3d 876, 886 (8th Cir. 2006) (citing Mathews v. Eldridge, 424 U.S. 319, 332–35 (1976)).

As noted above, Plaintiff does not specifically allege any constitutionally protected liberty interest from which he was denied due process. To the extent Plaintiff attempts to argue that he has a protected constitution interest in being a self-proclaimed "jailhouse lawyer," that argument necessarily fails as a MSOP civil committee's communications are afforded no additional constitutional protections beyond those provided for in the <u>Turner</u> test merely because they purportedly related to legal affairs or attempt to administer legal assistance. <u>See</u>, <u>Shaw</u>, 532 U.S. at 230. Moreover, Plaintiff's Complaint, citing a response from Defendant Geil, appears to allege that the confiscated documents would be returned to him when it was verified that he had the permission of the MSOP committee named on the legal document. (<u>See</u>, <u>Compl.</u> [Docket No. 1], at ¶ 12) ("staff [members] do have a right to ask the other client to confirm you are working together and/or temporarily secure items they believe are suspicious").[12]

Even broadly construing Plaintiff's Complaint, he identifies no constitutionally protected liberty interest. Without a protected interest, his procedural due process claim fails. <u>See</u>, <u>Bealieu</u>, 690 F.3d at 1047 (quoting <u>Wilkinson</u>, 545 U.S. at 221).

Therefore, the Court finds, as a matter of law, that Plaintiff could not obtain relief on this claim, and as such, the Court recommends **DISMISSING without prejudice** Plaintiff's procedural due process claim for monetary damages, injunctive relief, and declaratory relief against the named Defendants in their individual capacities as well as his procedural due process claim for injunctive and declaratory relief against Defendants in their official capacities.

---

[12] This assertion when read with Plaintiff's Complaint as a whole allows the reasonable inference that there is some process in place to return the documents to Plaintiff if the MSOP civil committee named in the document verifies that Plaintiff did have permission to possess the documents. (<u>See</u>, Compl. [Docket No. 1]).

## ii.  Substantive Due Process

As with his procedural due process allegation, Plaintiff does not identify any specific action which he alleges violated his substantive due process rights under the Fourteenth Amendment to the United States Constitution. (See, Compl. [Docket No. 1]).

"The substantive due process right found in the Fourteenth Amendment protects [Plaintiff] from government conduct (which deprives a person of life, liberty, or property) that 'shocks the conscience' or 'interferes with rights implicit in the concept of ordered liberty.'" Favors v. Hoover, No. 13-cv-428 (JRT/LIB), 2014 WL 4954687, at *15 (D. Minn. Sept. 30, 2014) (citation omitted). "To establish a substantive due process violation, the [claimant] must demonstrate that a fundamental right was violated and that [the defendants'] conduct shocks the conscience." Folkerts v. City of Waverly, Ia., 707 F.3d 975, 980 (8th Cir. 2013). "Only in the rare situation when the state action is 'truly egregious and extraordinary' will a substantive due process claim arise." Strutton v. Meade, 668 F.3d 549, 557 (8th Cir. 2012). The Eighth Circuit has further explained:

> [S]ubstantive due process is concerned with violations of personal rights . . . so severe . . . so disproportionate to the need presented, and . . . so inspired by malice of sadism rather than a merely careless or unwise excess of zeal that it amounted to brutal and inhumane abuse of official power literally shocking to the conscience.

Christiansen v. West Branch Cmty. Sch. Dist., 674 F.3d 927, 938 (8th Cir. 2012).

Plaintiff has not specifically identified a constitutional right or protected interest implicated by any action he alleges Defendants took. To the extent Plaintiff attempts to argue that he has a protected constitution interest in being a self-proclaimed "jailhouse lawyer," that argument necessarily fails as a MSOP civil committee's communications are afforded no additional constitutional protections beyond those provided for in the Turner test merely because

they purportedly related to legal affairs or attempts to provide legal assistance. See, Shaw, 532 U.S. at 230. Plaintiff has failed to plead sufficient facts to present a facially plausible § 1983 substantive due process claim based on the alleged interference on his work as a "jailhouse lawyer" or based on the confiscation of documents which Plaintiff does not actually plead he had permission to prepare or possess.

Even if there were a fundamental right implicated by Defendants' actions, the confiscation of papers for a temporary time is not conduct that shocks the conscience. Plaintiff has failed to plead sufficient facts to present a facially plausible claim that the document confiscations or the restriction on his preparation of papers for others without clearly stated permission violated his substantive due process rights.

Therefore, the Court recommends **DISMISSING without prejudice** Plaintiff's substantive due process claim for monetary damages, injunctive relief, and declaratory relief against the named Defendants in their individual capacities as well as his substantive due process claim for injunctive and declaratory relief against Defendants in their official capacities for failure to state a claim upon which relief may be granted.

## III.    CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.  Defendants' Motion to Dismiss, [Docket No. 10], be **GRANTED**, as set forth above; and

2.  Defendants' Motion to Dismiss, [Docket No. 22], be **GRANTED**, as set forth above**.**

Dated: January 31, 2017                                     s/Leo I. Brisbois
                                                            The Honorable Leo I. Brisbois
                                                            United States Magistrate Judge

**N O T I C E**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]"  A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.